IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 5:13-CV-794-FL

| | | |
|---|---|---|
| KATIE PARRISH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the government's motion for summary judgment which the court construes as a motion to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, for summary judgment, pursuant to Federal Rule of Civil Procedure 56. The issues raised have been briefed fully and in this posture are ripe for ruling. For the reasons stated more specifically herein, the government's motion to dismiss is granted in part and denied in part, and the government's motion for summary judgment is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff initiated this action by complaint filed November 14, 2013. Plaintiff alleges a single count of negligence under North Carolina law, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1) & § 2671 et seq. Plaintiff alleges defendant negligently maintained certain leased property when it failed to 1) keep the entranceway free and clear of danger, 2) warn patrons of a dangerous condition on the premises, 3) adhere to certain safety precautions, and 4) inspect the premises to determine whether or not a dangerous condition existed.

After a period of discovery, defendant filed the instant motion to dismiss for lack of subject matter jurisdiction, or in the alternative motion for summary judgment. In support of its motion, defendant contends the court lacks subject matter jurisdiction by virtue of the "independent contractor" exception to the FTCA and that, even if the court does have jurisdiction to hear this case, plaintiff has either failed to establish a prima facie case of negligence or was contributorily negligent as a matter of law.

In support of its motion, defendant submits a copy of the Lease Agreement in effect between itself and its landlord. (Lease Agreement, DE 14-1). Defendant also submits certain discovery responses provided by plaintiff. (Pl.'s Resp. to Def.'s First Set of Interrogs., DE 14-2; Pl.'s Resp. to Def.'s Second Set of Interrogs., 14-3; Def.'s Resp. to Pl.'s First Set of Interrogs., DE 14-4). In opposition to defendant's motion, plaintiff relies upon her own affidavit, (Parrish Aff., DE 17-1); photographs of the location of the incident, (Photographs, DE 17-2); and the depositions of the resident Postmaster and another postal employee. (Turnage Dep., DE 17-3; Martin Dep., DE 17-4).

## BACKGROUND

Defendant, through the United States Postal Service, operates a Post Office location in Selma, North Carolina. (See Lease Agreement at 1). Defendant does not own the building in which the Post Office is located. (See id.). Rather, defendant rents the space. (Id.).

The demised premises consists of a building, used as the Post Office, and a parking lot approximately 15 feet away from the building. (See Parrish Aff. ¶2; Turnage Dep. 9:4-10). Connecting the building and parking lot is a single sidewalk, which runs from approximately the center of the extreme end of the parking lot closest to the Post Office to the Post Office's main entrance. (Parrish Aff. ¶2). There is no other paved path connecting the parking lot to the building.

(Id.). To reach the sidewalk, a patron must walk through the parking lot. (Id.). Alternatively the patron may leave the parking lot and walk over a portion of the unpaved area between the parking lot and Post Office until the patron intercepts the sidewalk. (Id.). There is no paved path connecting the remote ends of the parking lot with the sidewalk. (Id.). Instead, there are concrete "bumpers guards," presumably to stop patrons' from pulling their cars too far forward in the space and leaving the parking lot. (See id.).

When entering the Post Office many patrons walk along the unpaved edge of the parking lot. (See id.). As a result, a dirt path has been worn down in what once was a grassy area. (Id.). Patrons' foot traffic has taken its greatest effect immediately adjacent to the sidewalk, where one would step from the unpaved dirt footpath to the paved sidewalk. (See id. ¶¶2, 4). A combination of foot traffic and weather has resulted in the sidewalk being "several inches" higher than the unpaved path, requiring a step-up when accessing the sidewalk. (Id. ¶4). Defendant was aware of the worn foot-path, and presumably that it was uneven with the adjacent sidewalk. (Turnage Dep. 22:17-21, 22:8-12, 23:3-6; Martin Dep. 35:3-36:15, 39:4-7)

In addition, the sidewalk running from the parking lot to the Post Office is itself in disrepair. A portion of the sidewalk is cracked and broken. (Parrish Aff. ¶4). As a result, the sidewalk is not an even surface. (See id.). It is unclear how long the sidewalk had been damaged, however, defendant had never received any complaints about its condition. (Def.'s Resp. to Pl.'s First Set of Interrogs., ¶7).

On February 21, 2011, plaintiff visited the Post Office. (Parrish Aff. ¶2). Once there, plaintiff parked her car in the lot and made her way through the unpaved area toward the sidewalk. (Id.). Plaintiff tripped, but did not fall, while stepping onto the sidewalk, as a result of the sidewalk

3

being "several inches" above the worn foot path. (Id. ¶4). Plaintiff stumbled onto the sidewalk and again tripped, this time while stepping over the broken portion of the sidewalk. (Id.). Already being unsteady, plaintiff fell as she stepped on the uneven portion of the sidewalk. (See id.). Although plaintiff had been to the Post Office on numerous occasions, often taking the same route, she had never noticed the sidewalk to be uneven. (Id. ¶7). As a result of her fall, plaintiff severely injured her left hand. (Id. ¶¶8-13).

Defendant and its landlord have incorporated into the Lease Agreement a "maintenance rider," containing several provisions regarding maintenance of and repair to the property, including the sidewalk. (Lease Agreement at 7-9). Specifically, the Lease Agreement requires the landlord "maintain the demised premises . . . in good repair and tenable condition" for the duration of the lease. (Id. at 7). The Lease Agreement allows the landlord "at reasonable times, and upon reasonable notice to the facility manager, [to] enter and inspect" the property and to make any necessary repairs. (Id.).

The Lease Agreement gives defendant broad power to demand its landlord make needed repairs. (Id. at 8). For example, the government may compel a repair if it, in its discretion, determines the premises is "unfit for use or occupancy," or whenever it observes "a need for maintenance, repair, or replacement" which the landlord is obligated to perform under the Lease Agreement. (Id.). When defendant demands a repair, the landlord has the affirmative obligation to "rebuild or repair the premises as necessary to restore them to tenantable [sic] condition to the satisfaction of the Postal Service." (Id.). If the landlord does not make such repairs in a timely manner, defendant may repair the premises itself or contract with a third party to undertake such repair. (See id.). The Lease Agreement gives defendant's landlord the right to inspect the property,

4

but imposes no affirmative obligation on her to do so. (See Lease Agreement at 7; id. passim). In addition, defendant's landlord is not required to repair damage caused by defendant's own negligence. (Id. at 7).

## COURT'S DISCUSSION

A.  Standard of Review

    1. Rule 12(b)(1)

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams, 697 F.2d at 1219. Under the former assertion, the moving party contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." Id. In that case, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Id. "[T]he facts alleged in the complaint are assumed true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). When the defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th

5

Cir. 1991). The nonmoving party "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

    2.    Summary Judgment

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other discovery materials properly before the court demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). When faced with cross-motions for summary judgment, the court must ask "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251; see also Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) ("[T]he court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.") (internal citations and quotations omitted).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.

Anderson, 477 U.S. at 250. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S.654, 655 (1962).

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.  Analysis

The issues raised in briefing primarily implicate this court's subject matter jurisdiction. See Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). As a sovereign, the United States may not be sued without its consent. Lane v. Pena, 518 U.S. 187, 192 (1996); Ready Transp., Inc. v. Military Traffic Mgmt Command, 86 F. App'x 561, 565 (4th Cir. 2004). Absent consent to be sued "unequivocally manifested in the text of a statute" the court lacks subject matter jurisdiction. See Williams v. United States, 242 F.3d 169, 173 (4th Cir. 2001).

The FTCA provides "a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." United States v. Orleans, 425 U.S. 807, 813 (1976).

7

However, the FTCA contains a number of jurisdictional exceptions, both explicit, see 28 U.S.C. § 2680 (listing statutory exceptions to jurisdiction), and implicit, see 28 U.S.C. § 2671; Orleans, 425 U.S. at 814-15 (discussing independent contractor exception to jurisdiction). The FTCA's waiver of sovereign immunity is "strictly construed, in terms of scope, in favor of the sovereign." Williams, 242 F.3d at 173. Thus, by implication, this court must construe the statute's jurisdictional exceptions broadly. See id.

To the extent plaintiff grounds her claim generally in the negligent maintenance of the demised premise, the court lacks subject matter jurisdiction to hear plaintiff's claim. Defendant delegated to its landlord, an independent contractor, the obligation to maintain the premises. The FTCA explicitly waives sovereign immunity for:

> injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). An "employee of the government" is any "person[] acting on behalf of a federal agency in an official capacity, temporarily or permanently, in the service of the United States, with or without compensation." 28 U.S.C. § 2671. However, § 1346(b)(1)'s waiver of sovereign immunity for the actions of "employees" does not extend to "independent contractors." See 28 U.S.C. § 2671; Orleans, 425 U.S. 413-15; Logue v. United States, 412 U.S. 521, 528 (1973). Williams, 50 F.3d at 304-05.

To determine whether an individual is an independent contractor the court examines the "terms of the contract defining the relationship" between the United States and the purported contractor. Williams, 50 F.3d at 304-05; see also Wood v. Standard Prods. Co., 671 F.2d 825, 829 (4th Cir. 1982). The crux of the inquiry is "whether the government exercises day-to-day control

8

over the performance of the work under contract." Berkman v. United States, 957 F. 2d 108, 114 (4th Cir. 1992). An individual otherwise properly categorized as an independent contractor is not transformed into an employee because the government controls the "peripheral, administrative acts relating to [the primary activity for which the parties have contracted.]" Id. Stated another way, the court must determine whether the United States "act[ed] generally as an overseer" or whether the government properly is characterized as a manager, which supervised the alleged tortious conduct. Williams, 50 F.3d at 306; Leone v. United States, 910 F.2d 46, 50 (2d Cir. 1990).

Viewing the contract as one for the provision of maintenance and repair services, plaintiff's claim must fail. The terms of the Lease Agreement make clear that the government did not control its landlord's principle obligation to maintain and repair the leased premises. The Lease Agreement provides that the landlord alone bears the responsibility to repair all damage to the property, except damage resulting from an act or the negligence of the Postal Service. (Lease Agreement at 7). Moreover, the Lease Agreement allowed the landlord to enter the premises and inspect for defects, (id.), as well as required her to repair the premises when notice was provided to her by the Postal Service.

The Postal Service acted merely as an overseer, requiring the landlord to perform repairs "to [its] satisfaction." (Lease Agreement at 8). The contract did not prescribe the manner in which the work was to be done. It did not mandate that the landlord perform the repairs herself. Nor did it obligate her to hire a specified third-party contractor. Moreover, the Lease Agreement did not fix specified times during which maintenance could take place. Finally, the Agreement contains no language suggesting that the landlord acted on behalf of the United States government. See Robb,

9

80 F.3d at 889-90 (discussing a non-exclusive list of factors relevant to the independent contractor analysis).

The Lease Agreement's requirement that defendant's landlord adhere to certain federal standards does not counsel in favor of the opposite conclusion. The government does not lose its immunity simply by setting standards with which its contractors must comply. See Orleans, 425 U.S. at 816 ("[B]y contract, the Government may fix specific and precise conditions to implement federal objectives [without losing immunity]."); Williams, 50 F.3d at 306 ("[T]he agency . . . was not an agent or employee of the United States for purposes of the FTCA, even though the United States set specific conditions to implement federal objectives and took action to compel compliance with federal standards."). Here, the provisions mandating compliance with certain Occupational Safety and Health Administration standards, as well as requiring compliance with all other applicable federal, state, and local regulations does not abrogate the government's immunity. (See generally, License Agreement, at 8-9).

In addition, the contractual provision requiring defendant's landlord perform repairs "to the satisfaction of the Postal Service" does not work to undermine the United States's sovereign immunity. This provision is akin to allowing the government to inspect its landlord's work. See Viault v. United States, 609 F. Supp. 2d 518, 525 (E.D.N.C. 2009) (finding right to "periodically evaluate" akin to the right to inspect). The Fourth Circuit has recognized that the government securing for itself the right to inspect the contractor's work is a permissible procedural safeguard. See Williams, 50 F.3d at 306 (citing Brooks v. A.R. & S. Enters., Inc., 622 F.2d 8, 12 (1st Cir. 1980)). The "broad supervisory power[] to control a contractor's compliance with [a] contract's specifications does not establish the agency relationship necessary for FTCA jurisdiction over the

10

[g]overnment." Fisko v. U.S. Gen. Servs. Admin, 395 F. Supp. 2d 57, 62 (S.D.N.Y. 2005); accord Hsieh v. Consol. Eng'g Servs., Inc., 569 F. Supp. 2d 159, 178 (D.D.C. 2008) (holding no jurisdiction over government where the contract at issue "provided GSA with the right to inspect work performed [by the contractor] for purposes of evaluating [the contractor's] compliance with its obligations under the [contract].").

Moreover, the contractual provision allowing defendant to complete work not performed in a timely manner, either itself or through a third-party contractor, does not transform the government's relationship with its landlord and thereby make defendant liable for her negligence. Notably, this provision has no bearing on the government's right to control its purported independent contractor. Thus, this clause is nothing more than a procedural safeguard, allowing the government to render the demised premises safe and habitable through alternative means where its landlord does not do so in a timely manner. Although the government ultimately may be liable where it actually undertakes to repair the premises, there is no suggestion that the government ever made such an attempt in this case.

Plaintiff's suggestion to the contrary is of no effect. Plaintiff argues that the primary purpose of the parties' agreement is to establish the lessor-lessee relationship, and that defendant's act of contracting performance of maintenance and repair services to its landlord was merely ancillary to that agreement. To the extent plaintiff suggests the independent contractor exception cannot apply in this case because defendant's maintenance contract is with its landlord, not a third party, the court disagrees. The FTCA's waiver of sovereign immunity is narrowly construed in favor of the government. See Williams, 242 F.3d at 173. Consistent with that purpose, defendant may assert the independent contractor exception even where the contractor is its landlord.

11

Insofar as plaintiff concedes that the independent contractor may apply in this case, but contends the focus of the court's "independent contractor" analysis, that is the "central purpose" of defendant's agreement with its landlord, was the establishment of the lessor-lessee relationship that theory renders plaintiff's claim untenable. The Supreme Court has noted that the relationship between defendant and its purported contractor is considered under general principles of agency law. See Orleans, 425 U.S. at 815 n.4 (discussing common law principles of agency law in independent contractor analysis under the FTCA); Robb v. United States, 80 F.3d 884, 887-89 (4th Cir. 1996) (applying common law principles to determine federal question of whether physician was an independent contractor for purposes of FTCA); see also N.L.R.B. v. United Ins. Co., 390 U.S. 254, 255-56 (1968) (applying common law principles to distinguish between independent contractor and employee under the National Labor Relations Act). In that light, to view the purpose of the contract as provision of rental property alone would be fatal to plaintiff's claim.

The nature of the lessor-lessee relationship represents an even more attenuated connection between two parties than a contractor relationship. See Restatement (Third) of Agency § 1.01 cmt. c. (suggesting no vicarious liability for the acts of "nonagent service providers"); Restatement (Second) of Agency § 220(2) (describing factors relevant to independent contractor analysis; all factors relating to work); 41 Am. Jur. 2d Independent Contractors § 1 (2015) (describing an independent contractor as one who provides labor or "contracts to do certain work"). Because of the attenuated connection between a lessor and lessee, the government hardly could be liable for negligent maintenance services provided by its landlord if it had entered into an agreement the primary purpose of which was to provide rental property. Accordingly, resolving the issue in the

12

light most favorable to plaintiff, as the court must do here, the proper focus of defendant's contract with its landlord is the provision of maintenance and repair services.

In sum, the court is without jurisdiction to hear any claim or argument that plaintiff's injuries were sustained as a result of defects in the property resulting defendant's landlord's negligent maintenance of the property. See 28 U.S.C. § 2671. However, that is not to say the court is without jurisdiction to hear plaintiff's claim in its entirety. While defendant's landlord generally was responsible for maintenance and repair of the premises, the Lease Agreement specifically excepted her from that responsibility where damage occurred as a result of defendant's own negligence. In addition, the Lease Agreement is silent on the issue of whether defendant or its landlord was to inspect the premises and warn patrons of potential hazards. To the extent plaintiff rests her negligence claim on these grounds, the court may exercise jurisdiction.

Where the court properly may exercise jurisdiction over a limited aspect of plaintiff's negligence claim, the FTCA provides that the United States is liable in tort in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 2672. Thus the court must apply North Carolina law to plaintiff's claims. Defendant moves for summary judgment arguing that plaintiff cannot establish a prima facie case of negligence, or in the alternative that plaintiff was contributorily negligent as a matter of law.

The court first addresses defendant's argument that plaintiff cannot establish a prima facie case of negligence. Under North Carolina law a negligence claim requires plaintiff to plead "duty, breach of duty, proximate cause, and damages." Estate of Mullis *ex rel.* Dixon v. Monroe Oil Co., 349 N.C. 196, 202 (1998). Plaintiff contends defendant was negligent in three ways: 1) creating the

13

allegedly hazardous condition; 2) failing to inspect the premises and initiate necessary repairs; and 3) failing to warn of the allegedly hazardous condition.

With regard to plaintiff's first proffered ground in defense of defendant's motion for summary judgment, the court disagrees. Plaintiff has pleaded no facts and produced no evidence from which the court may infer defendant's actions caused plaintiff's injury. Accordingly, defendant is entitled to summary judgment on this ground.

Plaintiff contends defendant created the hazard that ultimately led to her injury by placing certain impediments in the parking lot, which made full use of the sidewalk more difficult and necessitated the use of the "shortcut" path on which plaintiff fell. However, plaintiff cites no evidence that suggests defendant actually placed concrete "bumpers" in the parking lot. Rather, plaintiff's evidence shows that defendant knew the "shortcut" existed, (Turnage Dep. 22:17-21; Martin Dep. 35:3-22, 39:4-7), and that it was heavily used. (Turnage Dep. 22:8-12, 23:3-6; Martin Dep. 35:9-22). Based on that evidence alone, it would be unreasonable to infer that defendant actually created the allegedly hazardous condition. In addition, plaintiff does not direct the court to any evidence which supports her suggestion that defendant negligently created the condition of the sidewalk. Accordingly, because plaintiff has failed to produce any evidence tending to show defendant's negligence, defendant's motion for summary judgment must be allowed on that discrete point.[1]

However, with respect to plaintiff's second and third proffered ground, defendant's motion for summary judgment is denied. Plaintiff has created a genuine question of fact as to whether

---

[1] Certain evidence by plaintiff suggests that defendant may have placed concrete bumpers in a certain portion of the parking lot. (See Turnage Dep. 35:11-37:3). However, the record suggests that these additions occurred on the other side of the parking lot, away from where plaintiff fell. (See id. Ex. A.).

14

defendant's failure to either correct the allegedly hazardous condition or warn of the hazard after receiving actual or constructive knowledge of its existence breached a duty.

Under North Carolina law a business owes to plaintiff the duty of "ordinary care to keep in a reasonably safe condition those portions of its premises which it may expect will be used by its customers during business hours, and to give warning of hidden perils or unsafe conditions insofar as they can be ascertained by reasonable inspection and supervision." <u>Roumillat v. Simplistic Enters., Inc.</u>, 331 N.C. 57, 64 (1992), <u>abrogated on other grounds by</u>, <u>Nelson v. Freeland</u>, 349 N.C. 615 (1998).[2] Defendant at least had constructive knowledge of the well-worn footpath, which plaintiff describes as "several inches" below the sidewalk. (Turnage Dep. 22:17-21, 22:8-12, 23:3-6; Martin Dep. 35:3-22, 39:4-7). In addition, it is fair to infer that defendant would have seen the crack in the sidewalk had it inspected the property. (<u>See</u> Parrish Aff. ¶7). Moreover, plaintiff has adduced sufficient evidence on the issue of causation. In particular plaintiff has submitted an affidavit averring that both impediments, working in concert, caused her injury. (Parrish Aff. ¶¶6-7). Finally, plaintiff has presented sufficient evidence to show that she has been damaged, namely that she hurt her left hand, lost wages, and requires ongoing medical treatment. (<u>Id.</u> ¶¶8-15). Accordingly, plaintiff may pursue her claim inasmuch as she grounds it in defendant's failure to inspect the property and initiate repair or defendant's failure to warn patrons of potential hazards.

Nevertheless, defendant argues that it had no duty to warn or initiate repair of the alleged hazards because they were "open and obvious." The court disagrees.

---

[2] Although the Lease Agreement obligated defendant's landlord to repair the premises, defendant could be negligent in failing to contact its landlord and initiate those repairs.

"Reasonable persons are assumed, absent diversions or distraction, to be vigilant in the avoidance of a known and obvious danger." Roumillat, 331 N.C. at 66. Accordingly, "[a] proprietor has no duty to warn . . . of an obvious danger or a condition of which the [patron] has equal or superior knowledge." Id. at 66-67. Here the evidence viewed in the light most favorable to plaintiff establish a genuine dispute as to whether she had equal or superior knowledge of the hazard. Defendant was aware of the worn foot-path, and had defendant inspected the premises it would have known that the path and sidewalk were uneven. (Turnage Dep. 22:17-21, 22:8-12, 23:3-6; Martin Dep. 35:3-36:15, 39:4-7). In addition, given the nature of the crack in the sidewalk, it is fair to infer that, had defendant inspected the sidewalk, it would have known of the crack as well. (Parrish Aff. ¶7). By contrast, plaintiff had no knowledge of the allegedly hazardous condition. (Id. ¶¶4,6). Because the evidence, when considered in the light most favorable to plaintiff, creates a genuine dispute of material fact as to whether plaintiff equal or greater knowledge of the hazards defendant's motion must be denied to the extent defendant argues it had no duty to inspect and repair or to warn.

In any event, defendant contends summary judgment is appropriate on the alternative basis of contributory negligence. In North Carolina where a plaintiff negligently contributes to her own injury the doctrine of contributory negligence acts as a complete bar to recovery. Sorrells v. M.Y.B. Hospitality Ventures of Asheville, 332 N.C. 645, 648 (1992). Contributory negligence is an affirmative defense and defendant bears the burden of proof. Warren v. Lewis, 273 N.C. 457, 460 (1968). To determine whether plaintiff was contributorily negligent, the court asks whether "a person using ordinary care for . . . her own safety under similar circumstances" would have seen the hazards which caused plaintiff to fall. Norwood v. Sherwin-Williams Co., 303 N.C. 462, 468 (1981), abrogated on other grounds by Nelson, 349 N.C. 615 (1998).

16

The court cannot conclude plaintiff was contributorily negligent as a matter of law when the facts are considered in the light most favorable to plaintiff. Defendant's own evidence demonstrates a material dispute of fact. Defendant admits it never received any complaints about the sidewalk. (Def.'s Resp. to Pl.'s First Set of Interrogs., ¶7). When viewed in the light most favorable to plaintiff, this evidence suggests that a person of reasonable prudence would not have seen the alleged hazard, thus creating a question of fact as to plaintiff's alleged contributory negligence. Moreover, to the extent defendant grounds its motion in plaintiff's equal or superior knowledge of the alleged hazards, as discussed above, a genuine dispute of material fact precludes entry of summary judgment in defendant's favor on that point.

## CONCLUSION

Based on the foregoing defendant's motion to dismiss for lack of subject matter jurisdiction is GRANTED in PART and DENIED in PART. Defendant's alternative motion for summary judgment also is GRANTED in PART and DENIED in PART. Plaintiff may pursue her negligence claim to the extent it is grounded in defendant's failure to inspect the leased premises and initiate repairs, as well as defendant's failure to warn patrons of hazards on the leased premises. The parties are DIRECTED to confer and file with the court within **21 days** of this order a proposed case schedule for proceeding to trial.

SO ORDERED, this the 27th day of July, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge