IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CV-794-FL

| | | |
|---|---|---|
| KATIE PARRISH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss the case for lack of subject matter jurisdiction, made pursuant to Federal Rule of Civil Procedure 12(b)(1). The issues raised have been briefed fully and in this posture are ripe for ruling. For the reasons given below, defendant's motion is granted in part and denied in part.

**STATEMENT OF THE CASE**

Plaintiff initiated this action by complaint filed November 14, 2013. Plaintiff alleges that she fell on a negligently maintained sidewalk at a United States Post Office and asserts a single count of negligence under North Carolina law, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1) & § 2671 et seq. Specifically, plaintiff alleges defendant negligently failed to repair the damaged sidewalk, negligently inspected the premises, and negligently failed to warn patrons of the potentially dangerous condition. In addition, plaintiff contends that defendant's active negligence contributed to the dangerous condition that caused her fall.

After a period of discovery, defendant filed a first motion to dismiss for lack of subject matter jurisdiction, or in the alternative motion for summary judgment. By order entered July 27,

2015, the court granted in part and denied in part defendant's motion. In particular, the court held that it lacked jurisdiction over plaintiff's negligence claim attacking defendant's failure to repair the damaged sidewalk because defendant had engaged an independent contractor to maintain the premises. In addition, the court held that defendant was entitled to summary judgment on plaintiff's negligence claim to the extent that claim was grounded in defendant's creation of the dangerous condition that caused her fall, as plaintiff failed to adduce any evidence of defendant's involvement. However, the court's order left undisturbed plaintiff's claim inasmuch as it related to three specific failings: failure to inspect the premises, failure to contact the contractor and demand necessary repairs based on that inspection, and failure to post warning signs after that inspection.

On August 14, 2015, defendant filed the instant motion to dismiss for lack of subject matter jurisdiction. In its motion, defendant argues that the court lacks jurisdiction under the so-called "discretionary function exception" to the FTCA. 28 U.S.C. § 2680(a). In particular, defendant contends that its decision to engage a third-party contractor, a recognized discretionary function, divests the court of jurisdiction as to the remaining grounds supporting plaintiff's claim. In response, plaintiff contends that, under the specific facts of this case, defendant's agreement with its third-party contractor was not broad enough to preclude liability for defendant's alleged failures, and that, in addition, defendant's failure to inspect the premises, demand its contractor undertake repairs, and warn of potential dangers, are not themselves discretionary functions.

**STATEMENT OF FACTS**

Defendant, through the United States Postal Service (the "Postal Service"), operates a Post Office location in Selma, North Carolina. (See Lease Agreement, DE 14-1, 1).[1] Defendant does not own the building in which the Post Office is located. (See id.). Rather, defendant rents the space. (Id. passim).

On February 21, 2011, plaintiff visited the Selma Post Office. (Compl., DE 1, ¶8). During that visit, plaintiff tripped on an uneven portion of the sidewalk, which connected the parking lot to the Postal facility. (Id. ¶¶10–12). As a result of her fall, plaintiff suffered a significant injury to her left hand. (Id. ¶¶12–13). Plaintiff alleges that her injury was caused by a lack of warning, or a failure to initiate repair, and that had the Postal Service's agents or employees properly inspected the premises and subsequently demanded repairs by the contractor, or otherwise warned patrons of the potential hazard posed by the uneven sidewalk, she would not have been injured. (See id. passim).

**COURT'S DISCUSSION**

A.  Standard of Review

The discretionary function exception excludes certain discretionary acts from the FTCA's broad waiver of sovereign immunity. Where the United States has not waived its sovereign immunity, the court lacks subject matter jurisdiction. Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the

---

[1] The Lease Agreement is attached to and incorporated by reference in the complaint. Thus, the court may consider its contents without converting the instant motion into one for summary judgment. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (when no hearing is held on a Rule 12(b)(1) motion the plaintiff is afforded "the same procedural protections as he would receive under a Rule 12(b)(6) consideration").

plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams, 697 F.2d at 1219. Under the former assertion, the moving party contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." Id. In that case, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Id. "[T]he facts alleged in the complaint are assumed true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). When the defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

B.   Analysis

    1.   Legal Principles

The Federal Tort Claims Act authorizes suits against the United States for damages

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). The United States is liable for such tort claims "in the same manner and to the same extent as a private individual under like circumstances." § 2674.

The FTCA does not, however, operate as a blanket waiver of sovereign immunity. "Congress was careful to except from the Act's broad waiver of immunity several important classes of tort claims." United States v. S.A. Empressa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984). As relevant here, the FTCA does not apply to

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

§ 2680(a). The second clause of § 2680(a) is known as the "discretionary function exception." It "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." Varig Airlines, 467 U.S. at 808.

To determine whether the discretionary function exception bars suit against the United States the court employs a two-step analysis. Berkovitz v. United States, 486 U.S. 531, 536–37 (1988). First the court considers "whether the action is a matter of choice." Id. at 536. Conduct cannot be discretionary unless it involves some choice or "element of judgment." Id.; see also Dalehite v. United States, 346 U.S. 15, 34 (1953). "The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." United States v. Gaubert, 499 U.S. 315, 322 (1991) (internal quotations and citations omitted).

5

If the conduct involves an element of judgment or choice, the court still must determine "whether that judgment is of the kind the discretionary function exception was designed to shield." Id. at 322–23. The discretionary function exception "prevent[s] judicial 'second guessing' of legislative and administrative decision grounded in social, economic, and political policy through the medium of an action in tort." Id. at 323. Thus, social, economic, and political policy choices are insulated from suit where they are "grounded in" or "within the purview of the policies behind the [relevant] statutes [or regulations]." Id. at 323, 333.

Analysis of the second prong does not require proof that the agent actually considered policy in exercising his or her discretion. Rather, the court objectively inquires into "the nature of the actions taken and . . . whether they are susceptible to policy analysis." Id. at 325. In addition, the second prong of the Gaubert analysis encompasses both administrative and planning level decisions, as well as day-to-day operational decisions. See id. at 323–24. There is no requirement that the government agent whose actions are challenged have either policy making capacity or be required to consider the policy implications of a given decision. Cf. id. at 337–38 (Scalia, J., concurring). Instead, when "established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy." Id. at 323–24 (majority op.). A plaintiff may overcome this presumption by alleging facts showing that "the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Id. at 325.

2. Effect of Hiring a Third-Party Contractor

The government argues that the discretionary function exception insulates it from liability on all claims related to its duty to inspect and demand repair, as well as its duty to warn, because

6

those decisions were embraced by the overarching decision to engage a third-party contractor, which is itself a discretionary decision. The government's argument is too broad and, in light of the facts of this case, inapplicable here. The government failed to delegate its duty to inspect the premises and, thus, failed to delegate its responsibilities as a landowner.

It is undisputed that the government delegated to its contractor the duty to perform repairs. However, the decision to engage a contractor for a limited purpose does not implicate the discretionary function exception so as to insulate the United States from all claims or in every case. See, e.g., McMellon v. United States, 387 F.3d 329, 348 n.8 (4th Cir. 2004) (en banc) ("We note, however, that determining whether the facts of a case fit within the scope of the discretionary function exception itself involves a cautious case-by-case analysis."); Shansky v. United States, 164 F.3d 688, 692–93 (1st Cir. 1999); Cope v. Scott, 45 F.3d 445, 449 (D.C. Cir. 1995). The central issue in this case is whether the government also delegated to its contractor the duty to inspect the premises. If the government's duty to inspect was delegated to an independent contractor, the United States is protected from claims arising out of other, collateral failures, such as a "failure to warn." See Williams, 50 F.3d at 310; see also United States v. Viault, 609 F. Supp. 2d 518, 528 (E.D.N.C. 2009). In addition, on the facts of this case, if the United States's duty to inspect was delegated to an independent contractor then so too was its duty to demand repairs. See Williams, 50 F.3d at 310.

The government did not delegate its duty to inspect. In particular, the Lease Agreement provides only that the contractor "may" inspect the premises, not must. (Lease Agreement, 7). In addition, the Lease Agreement does not provide the contractor unfettered access to the premises. Rather, it requires the contractor give "reasonable notice to the facility manager" before entering

7

onto and inspecting the premises. (Id.). Clause 10 of the Lease Agreement's Maintenance Rider goes even further, suggesting that the Postal Service affirmatively retained the obligation to inspect. (See id. at 8). Specifically, that clause provides that if the premises is "damaged or destroyed by fire or other casualty, Acts of God, of a public enemy, riot or insurrection, vandalism, or . . . otherwise determined by the Postal Service to be unfit for use and occupancy, or whenever there is a need for maintenance, repair, or replacement which is the [contractor's] obligation" that the Postal Service "will require the [contractor] to rebuild or repair the premises." (Id.). The use of "determined by the Postal Service," as well as "[the Postal Service] will require," strongly suggests that the Postal Service retained the duty to inspect the premises. And, thus, the court so holds.

The United States advances a different interpretation of both Williams and Viault, one that would provide a defense against all claims in all cases where an independent contractor was retained for some limited purpose. Not only does the government's suggested reading of those cases lack support as an impermissible categorical approach to the discretionary function exception, see, e.g., McMellon, 387 F.3d at 348 n.8, but also it lacks foundation in the analysis employed by both the Williams and Viault courts. Both cases rely on the United States's discretionary decision to delegate to a third party the duty of inspection and hold that, in light of the discretionary decision to delegate inspection, the court lacks jurisdiction over the government's alleged failure to perform various other duties that necessarily require inspection. In essence, the courts characterized the duty of inspection as the logical antecedent to the duty to warn; when the government, in its discretion, delegates its duty to inspect, it cannot be held liable for subsequent actions that necessarily require an inspection.

8

For example, in <u>Williams</u> the court held that the government's alleged negligent inspection of a property, and subsequent failure to warn of a potential hazard, was a non-actionable discretionary function, given that the government had retained a contractor for those purposes. <u>Id.</u> at 310. The plaintiff sued the United States when, on a particularly rainy day, she slipped in a puddle that had formed inside the lobby of a building leased by the government. <u>Id.</u> at 302–03. The plaintiff contended that the government had negligently inspected its property and, as a result of that negligent inspection, had failed to warn patrons of potential hazards.

As relevant here, the United States asserted the discretionary function exception, arguing that its decision to engage a third-party contractor insulated it from liability. <u>Id.</u> The government's agreement with its contractor obligated the contractor to inspect and monitor all work performed on the premises, as well as to "take all necessary precautions to prevent injury to the public, building occupants, or damage to the property of others." <u>Id.</u> at 302. In addition, the contract imposed several specific obligations on the contractor, which included a clause requiring it to ensure that the building's floors were "slip resistant" on a daily basis. <u>Id.</u> On those facts, the Fourth Circuit held that it lacked jurisdiction over plaintiff's claims arising from the government's alleged negligent inspection and failure to warn. The court reasoned that the decision to engage a third-party contractor was discretionary. <u>Id.</u> at 309–10. Extrapolating, the court further reasoned that because the government had assigned its duty to inspect to its contractor, it could not be held liable for a negligent inspection and the accompanying failure to warn. <u>Id.</u> at 310.

Similarly, in <u>Viault</u>, 609 F. Supp. 2d 518, the court held that the United States's discretionary decision to engage a contractor on terms so comprehensive as to effectively require that contractor to inspect freight trailers delivered by it to the government divested the court of jurisdiction in a

9

failure to warn suit. Id. at 521–22, 528. The plaintiff brought suit after being injured by a fall through a sizeable hole in the floor of a freight trailer leased to the government by its third-party contractor, Waste Industries. Id. The plaintiff's supervisor, a government employee, had inspected the trailer and located the hole, but failed to provide any warnings about the presence of danger. Id. On those facts, the court held that the government's failure to warn was discretionary, in light of the government's discretionary decision to engage Waste Industries, citing Williams. Id. at 528–29. More specifically, the court held that "inspection of the trailer and [a subsequent] failure to post a warning sign after discovering the hazard, like the allegedly negligent acts in Williams, [we]re 'embraced by the overarching decision to engage' Waste Industries." Id. at 528 (quoting Williams, 50 F.3d at 310).

The Viault case is non-specific about the agreement between the government and Waste Industries. However, an analysis of the language used in that document will bring to light distinctions between that case and the instant matter. As gleaned from the underlying documentation, the contract between the government and Waste Industries obligated Waste Industries to provide safe equipment. In particular, Waste Industries was required to intermittently supply the government with freight trailers that "conform[ed] to the requirements of [the] contract," which, among other things, required those trailers be in "good, safe, and operable condition." Attachment to Gov't's Motion to Dismiss, Viault v. United States, 4:07-CV-41-H (E.D.N.C. June 5, 2008), pp. 8, 30. In addition, the contractor was required to remedy "[u]nsafe conditions and practices . . . immediately." Id. at 34. A fair reading of the contract suggests that the government had entrusted to Waste Industries the burden of inspecting the freight trailers delivered by it on an as-needed basis. Thus, the government delegated its duty to inspect the trailers, was entitled to rely

on Waste Industries's contractual representations as to the safety of the freight trailers it delivered, and was relieved of the duty to warn.

This case stands in stark contrast to both Williams and Viault. For example, the contract before this court lacks the comprehensive language necessary to conclude that the Postal Service had delegated to its contractor the duty to inspect the Post Office. In addition, the contract does not provide the contractor with unfettered access to the property and, further, suggests that the Postal Service retained the obligation to inspect. Because the government failed to delegate its duty to inspect, the court cannot conclude that the discretionary function exception insulates it from liability solely because it engaged a third-party contractor.

3. Challenged Actions Individually

Having concluded that the government's use of an independent contractor does not insulate it from liability, the court next considers whether the government's challenged actions, individually, were "discretionary." See Gaubert, 499 U.S. at 328–34. The court first considers the duty of inspection, which must be non-discretionary to support liability under either theory. See Williams 50 F.3d at 310. Because the court holds that inspection was not discretionary in this context, the court also must consider whether the government's failure to demand repair and failure to warn were discretionary.

a. Inspection

The complaint is unclear as to whether defendant either negligently inspected the premises or failed to inspect it altogether. However, either theory may be actionable under the circumstances. See Rich v. United States, __ F.3d __, 2015 WL 9466900, at *5 (4th Cir. 2015). A claim grounded in defendant's negligently performed inspection is not discretionary because it fails the second prong

11

of the Gaubert test; a negligently performed inspection is not grounded in policy considerations. Id. at *6 ("[D]iscretionary conduct cannot be grounded in a policy decision when that conduct is marked by individual carelessness or laziness."). In addition, under the circumstances of this case, a total failure to inspect also is not protected by the discretionary function exception. With regard to the first step of the Gaubert analysis, it is not apparent that the Postal Service may exercise discretion on the issue of whether or not it inspects the premises. Certainly, the Postal Service may exercise its discretion in "maintain[ing] buildings, facilities, equipment, and other improvements." 39 U.S.C. § 401(6). However, it is unclear whether the Postal Service properly could maintain its various facilities without a properly performed inspection of the premises.

Moreover, it is difficult to imagine an social, economic, or political justification for the Postal Service's failure to inspect that also is grounded in its statutory purpose. The purpose of the Postal Service is statutorily defined, and is best summarized as the provision of "prompt, reliable, and efficient [mail] services." § 101(a). The decision to not post warning signs does not further this statutory policy in a social, economic, or political way. Although it could be argued that warning would divert resources, such as limited personnel, or otherwise have an adverse economic impact on the Postal Service, such considerations are not "grounded in" its statutorily-established purpose. At best, those considerations are tangentially related to the effective provision of postal services. However, "[t]he mere association of a decision with regulatory concerns is not enough" to warrant immunity. Cope, 45 F.3d at 449; accord Rich, 2015 WL 9466900, at *5 n.7 (noting need for "limiting principle" in application of the discretionary function exception). To endow a decision with such an attenuated connection to the Postal Service's overarching goal with the protected "discretionary" label "would allow the exception to swallow the FTCA's sweeping waiver of

12

sovereign immunity." Cope, 45 F.3d at 449; accord United States v. Yellow Cab Co., 340 U.S. 543, 547 (1951) ("The Federal Tort Claims Act waives the Government's immunity from suit in sweeping language."). Accordingly, the court holds that, in this case, the duty to inspect was not discretionary and the Postal Service's negligent exercise, or abdication of that duty is not shielded from liability.

          b.      Demand Repair

Because in this case inspection is a non-discretionary duty, the court next must analyze whether the Postal Service was required to demand its contractor undertake repairs on the premises. As relevant to the first step, plaintiff rightly concedes that no statute or regulation makes repair of a Postal premises mandatory. In fact, the law suggests that the Postal Service may exercise discretion in how to "maintain [its] buildings . . . [and] facilities." 39 U.S.C. § 401(6). The law prescribes no maintenance regimen; rather, it leaves it to the Postal Service to determine the best method for the upkeep of its various facilities.

Where the statute prescribes no mandatory upkeep requirement, the court next must determine whether the Postal Service's failure to demand repair was a "discretionary" decision of the type protected by the FTCA. It was. The court presumes that the decision not to demand repair was discretionary because it was "within the purview of the policies behind the statute[]." Gaubert, 499 U.S. at 333. Under the circumstances of this case, the Postal Service's decision not to demand its contractor repair the premises is insulated from liability because it implicates statutory policies that place a premium on access to postal services. For example, the Postal Service's statutory policy statement requires "prompt, reliable, and efficient services to patrons in all areas." 39 U.S.C. § 101(a). In addition, another section of the Postal Service's statutory policy statement demands it

13

"provide a maximum degree of effective and regular [P]ostal services," even in the face of unprofitability. 39 U.S.C. § 101(b). Thus, structural changes to the sidewalk leading to the entrance of the Post Office could have impeded access to the building, affecting the promptness, reliability, and regularity of postal services. Because the Postal Service's statutory policies afford access to its services paramount importance, the decision to defer arguably-necessary repairs to the leased premises was discretionary. Thus, the court lacks jurisdiction over plaintiff's claim inasmuch as it is grounded in a failure to demand repairs.

        c.        Duty to Warn

However, the court reaches a different conclusion as to the Postal Service's alleged failure to inspect the Post Office premises and warn of potential hazards. In light of the statutory and regulatory purpose of the United States Postal Service, the court holds that the Postal Service's failure to warn patrons of potential tripping hazards, in this case, was not susceptible to policy analysis, and thus is not insulated from liability by the discretionary function exception. On the facts of this case, the court cannot conclude that the exercise of the duty to warn was discretionary, because warning does not implicate any social, economic, or political policy.

Again, the Postal Service may exercise its discretion to "maintain buildings, facilities, equipment, and other improvements." 39 U.S.C. § 401(6). However, there is no explicit obligation to warn patrons of potential hazards. Nevertheless, even though the absence of a mandatory statute suggests that the Postal Service may exercise discretion in complying with the duty to warn, that discretion is not the type protected by the discretionary function exception; it finds no basis in the larger set of statutory policies to be achieved by the Postal Service. To the limited extent a failure to warn is an "economic" consideration, that characterization is of little effect. In this context, the

14

economic cost of warning bears too attenuated a connection to the Postal Service's central goal of effective mail delivery to be considered "grounded in" that policy. See Gaubert, 499 U.S. at 325; Rich, 2015 WL 9466900, at *5 n.7 (noting need for "limiting principle" in application of discretionary function exception; stating "[t]here is always some level of discretion regarding the performance of even the most specific of mandates").

Numerous cases have suggested that the duty to warn is discretionary. At this juncture, a brief discussion of the facts and circumstances separating those several cases from this one is appropriate. See, e.g., McMellon, 387 F.3d at 348 n.8. Cases holding the duty to warn to be discretionary roughly may be divided into two groups: cases where the decision to warn is discretionary in light of the particular agency's statutory purpose, see generally, e.g., Minns v. United States, 155 F.3d 445 (4th Cir. 1998), and cases where the decision to warn was discretionary in light of an immediate hazard. See generally, e.g., Smith v. Wash. Area Metro. Transit Auth., 290 F.3d 201 (4th Cir. 2002); Williams, 50 F.3d 299. In the first category, the government's failure to warn is rendered discretionary by competing considerations imposed by the agency's statutory mandate. For example, in Minns the Fourth Circuit held that the United States Army's failure to warn of adverse side-effects of a certain drug administered to soldiers deployed in the 1991 Persian Gulf War was discretionary. 155 F.3d at 447, 452. In particular, the court held that "[t]he decision whether to warn about the [adverse] effects . . . implicated other military decisions such as whether to risk alerting the enemy about war preparations and whether to give a warning that might be harmful to cohesion, particularly when the decision had already been made to use the drugs." Id. at 452.

15

Minns is not an aberration. Similar government decisions routinely are found to be discretionary. See, e.g., Maas v. United States, 94 F.3d 291, 297 (7th Cir. 1996); *In re* Consolidated U.S. Atmospheric Testing Litig., 820 F.2d 982, 997–98 (9th Cir. 1987); *In re* Agent Orange, 818 F.2d 194, 200–01 (2d Cir. 1987). In Atmospheric Testing, a variety of plaintiffs sued the United States for failure to warn of harmful health effects caused by nuclear testing carried out by the Atomic Energy Commission and its contractors in conjunction with the Joint Chiefs of Staff. 820 F.2d at 984–86. The court held that the discretionary function exception barred those claims based on the government's failure to warn. In particular, the court noted that in deciding not to warn the government necessarily "t[ook] into account sensitive questions concerning [a warning's] impact on on-going and future tests and on the military and civilian participants." Id. at 997. Thus, similar to Minns, the court considered the government's failure to warn in light of the purposes of the nuclear program.

Other cases, outside the national security arena, also illustrate that a failure to warn usually is discretionary only where it bears some relationship to the agency's overall purpose. See generally, e.g., S.R.P. *ex rel* Abunabba v. United States, 676 F.3d 329 (3d Cir. 2012); Cope, 45 F.3d 445; Lesoeur v. United States, 21 F.3d 965 (9th Cir. 1994); Kiehn v. United States, 984 F.2d 1100 (10th Cir. 1993). In S.R.P, Lesoeur, and Kiehn the courts held that the National Park Service's failure to warn about a specific hazard was discretionary in light of the agency's purpose. See S.R.P., 676 F.3d at 336–37 (decision not to warn of specific hazard "susceptible to policy analysis" because it implicated economic policy, as well as the "risk of numbing . . . visitors to all warnings"; also the "determination [wa]s directly related to the NPS's mission of preserving national parks"); Lesoeur, 21 F.3d at 969–70 (failure to warn tribal river tour was not regulated bound up in National

16

Park Service's "decision not to regulate the Tribe's tours in the first place"; implicated tribal relations); Kiehn, 984 F.2d at 1103–04 (decision not to warn was grounded in the National Park Service's "overall policy" of "carefully using signs so as to minimize their intrusion upon the area's natural and historic setting."). In each case, the court observed that the need for a warning could have been balanced against competing considerations, such as preservation of the park.

By contrast, in Cope v. Scott, the Court of Appeals for the District of Columbia Circuit held that the National Park Service could be liable for inadequate warning when it failed to post sufficiently numerous and specific signs warning of slippery road conditions along a rural road in the District of Columbia. Although the road, Beach Drive, officially was located in a national park, it was used primarily for commuter travel. In holding that the duty to warn was non-discretionary, the court observed that frequently the National Park Service's failure to warn properly would be characterized as discretionary because such decisions required "difficult policy judgments balancing the preservation of the environment against the blight of excess signs." Cope, 45 F.3d at 452. However, on the circumstances of the case, the court reasoned that the Park Service's "failure to warn" was not discretionary because the Park Service did not maintain the road for the purpose of environmental preservation. Id. Specifically, the court observed that "Beach Drive is not the Grand Canyon's Rim Drive, nor Shenandoah's Skyline Drive. Here, the Park Service has chosen to manage the road in a manner more amendable to commuting through nature than communing with it." Id. Thus, because the National Park Service maintained the road in question for a purpose outside the scope of its statutory and regulatory mission, its failure to warn was not insulated from suit on the basis of "discretion."

This case is more in line with Cope than Minns or S.R.P. In particular, the Postal Service's failure to warn, while not at odds with its statutory mission, does not further its goals. The decision to warn of potential hazards at the premises in issue did not further the Postal Service's goals of efficient distribution of letters and other mail to the masses. Rather, it was a routine administrative matter divorced from public policy considerations. To allow the government to characterize the mundane act of warning as "discretionary" would run roughshod over the need for a "limiting principle" guiding application of the discretionary function exception. See Rich, 2015 WL 9466900, at *5 n.7.

In any event, the Postal Service's decision to provide no warning also was not discretionary under the second group of cases, those holding warning to be discretionary in light of an immediate hazard. Two cases from the Fourth Circuit address this matter directly. First, in Smith v. Washington Metro, the court found that the Washington Metro Authority was under no obligation to warn passengers that several of its escalators were inoperable. In that case, the plaintiffs' son died after suffering a heart attack, which occurred after he walked up an escalator that had been converted into a "stationary walker," or, in other words, stopped. Smith, 290 F.3d at 203–04. Although the Metro station at which he died had three escalators, the Metro Authority had decided to stop the escalator in question because the other two escalators suddenly had become inoperable. Id. In holding that the discretionary function exception absolved the Metro Authority of liability for a failure to warn, the Fourth Circuit reasoned that the failure occurred in conjunction with an "emergency situation." Id. at 210.

Similarly, in Williams the court held that, notwithstanding its earlier conclusion that the government's discretionary use of an independent contractor insulated its decision not to warn, the

18

United States's failure to warn still was discretionary under the facts of that case. 50 F.3d at 310–11. In Williams, the plaintiff slipped on a puddle of water that had accumulated in the lobby of a building leased by the United States Department of Justice. Id. at 301–02. The dangerous condition had come about quickly, as a result of "torrential rains" on the day of the accident. Id. at 303.

Taken together, Smith and Williams stand for the proposition in response to an immediate hazard the United States may exercise its discretion in warning of the hazard, or not warning of it. See also Rosebush v. United States, 119 F.3d 438, 443 (6th Cir. 1997) ("Decisions concerning the proper response to hazards are protected from tort liability by the discretionary function exception.") (collecting cases). dDecember 31, 2015Allowing the United States the discretion to warn about a quick-occurring hazard is both sensible and comports with Gaubert's requirement that discretionary decisions be "grounded" in the regulatory regime. In particular, when faced with an immediate hazard the United States should be afforded the discretion to either warn or focus its resources on abating the hazardous condition. However, this case does not concern such a quick-forming hazard. The dangers present at the Selma Post Office location had been long standing. (See Compl. ¶¶9–12). Where dangers are long standing, the policy justifications supporting the government's exercise of discretion in responding to a hazard dissipate, if not disappear altogether.

In sum, the United States is not entitled to discretionary immunity on all possible grounds supporting plaintiff's claim. The government's decision to retain a contractor on a limited basis does not afford the United States carte blanche to ignore the duties imposed on landowners by common law. In addition, the government's failure to inspect the property and warn of potential hazards also is not discretionary in light of the United States Postal Service's statutory policies.

19

Nevertheless, application of the discretionary function exception is multifaceted and a change in circumstances may require a different perspective. In particular, nothing in this court's holding should be read as precluding the government from making a motion to dismiss this case for lack of subject matter jurisdiction at trial on the basis that the hazard in question was "open and obvious." See Smith, 290 F.3d at 210 ("The METRO is entitled to be accorded immunity from a negligence claim in this situation, because, . . . [any] duty to warn of this open and obvious hazard is discretionary and exempt from an action in tort.") (citations and internal quotations omitted).

## CONCLUSION

Based on the foregoing, the United States's motion to dismiss for lack of subject matter jurisdiction, made pursuant to 28 U.S.C. § 2680(a) and Federal Rule of Civil Procedure 12(b)(1), is GRANTED in PART and DENIED in PART. Plaintiff may pursue her claim inasmuch as she alleges a negligent failure to inspect the premises and warn of potential dangers. The parties are DIRECTED to confer and file with the court within **21 days** of this order a proposed case schedule for proceeding to trial.

SO ORDERED, this the 5th day of January, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge